IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAWN FIELDS and ) | |
| BLAS MANZANARES, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 04 C 6373 |
| ) | |
| UNITED TRANSPORTATION UNION and ) | |
| NORTHEASTERN ILLINOIS ) | |
| REGIONAL COMMUTER RAILROAD ) | |
| CORPORATION d/b/a METRA ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Shawn Fields and Blas Manzanares have filed suit pursuant to the Railway Labor Act claiming that the United Transportation Union (UTU) breached its duty of fair representation and that the Northeastern Illinois Regional Commuter Railroad Corporation (Metra) breached its collective bargaining agreement with UTU. The defendants have moved for summary judgment. The Court grants the motions.

**Facts**

On July 6, 1998, Metra hired thirteen individuals to participate in the agency's Accelerated Locomotive Engineer Training program. The men were originally classified as trainmen but were to be reclassified as engineers upon completing the program. Six of the men were already Metra employees; the other seven, including the plaintiffs, were new Metra hired

1

"off the street." Upon being hired by Metra, they became members of UTU, the trade union that represented Metra trainmen. Def. Consol. 56.1 Stmt. ¶¶ 4-6, 8.

Seniority is essential to all union employees at Metra, as it determines assignments, schedules, and layoffs. Pl. 56.1 Stmt. ¶¶ 4, 7. For the men hired on July 6, 1998 (the July 6th trainmen), that date served as their seniority date while they worked as trainmen and when they were promoted to positions as engineers. The dispute underlying this case concerns a disagreement between some of the July 6th trainmen (including the plaintiffs), Metra, and the UTU about Metra's policy for breaking seniority ties among trainmen with the same seniority date.

In January 1999, Metra posted a seniority roster that included the July 6th trainmen. According to plaintiffs, Metra also posted a seniority roster in August 1998, but Metra denies that it took this action and maintains that even if it did, only the roster posted in January of each year is an official roster according to the collective bargaining agreement (CBA) with UTU. In compiling this roster, Metra broke the seniority tie among the July 6th trainmen by ranking at the top those individuals who had previously been employed by Metra in the order of their initial hiring, and then ranking new hires in alphabetical order. Pl. 56.1 Stmt. ¶ 16.

Brian Valleau, one of the new hires who attended the July 6 orientation, disagreed with the second method used to break the seniority tie. He claimed that Metra should have used the new hires' dates of birth to break the tie, a method that would give the oldest new hire – Valleau – the highest seniority ranking. Metra officials looked into Valleau's complaint, determined that Metra's past practice was to use trainmen's dates of birth to break ties, and changed the seniority list accordingly. Def. 56.1 Stmt. ¶¶ 28-33.

Plaintiffs contend that they were told at their orientation that seniority ties would be broken alphabetically using the new hires' last names. After the revision was made, plaintiffs drafted a letter claiming that Metra had arbitrarily violated their seniority, and they filled out time slips claiming extra compensation for each day the alleged violation continued. On March 2, 1999, UTU Local Chairmen Bernard Leslie and Salvador Ochoa wrote a letter on behalf of the aggrieved July 6th trainmen to Metra Superintendent Peter Zwolfer protesting the revision of the seniority roster. On April 9, 1999, Zwolfer responded to the Leslie/Ochoa letter. He denied the protest, claiming that Metra's past practice had always been to use birth dates to determine seniority order for trainmen and that no one had told the trainmen how seniority ties would be resolved. Def. 56.1 Stmt. ¶¶ 38-44.

On September 24, 1999, Leslie responded to Zwolfer, stating, "It is our understanding that I will process one claim on behalf of all of these gentlemen and that you and I will hold all other claims and forego the normal declination process until this one claim works it's (sic) way through the appeal process." Pl. Ex. D. Leslie believed that this letter put the claims of all of the aggrieved July 6th trainmen in abeyance; Zwolfer believed that Leslie would pursue a single lead claim and would wait until that claim was processed to decide whether to pursue the other claims. Leslie Dep. at 253; Zwolfer Dep. at 117.

On May 2, 2001, Leslie reinitiated the processing of the lead claim, but Zwolfer responded that because Leslie and the UTU had declined to pursue the lead claim, the time for appealing Metra's decision to change the seniority list had expired. On May 16, Leslie wrote a letter to Zwolfer claiming that he had misconstrued their agreement, and on June 25, Kevin King, the General Chairman of the UTU, sent a letter to James Finn, Metra's Labor Relations

3

Manager, outlining the arguments in favor of plaintiffs. On August 21, Finn denied UTU's protest to the seniority rosters, and on August 27, King responded that UTU was rejecting Finn's decision. Metra and UTU representatives held an unsuccessful conference to resolve the dispute. They subsequently referred the dispute to a Railway Labor Act Public Law Board (PLB). Def. 56.1 Stmt. ¶¶ 51-57.

On February 11, 2004, the PLB found in Metra's favor. First, the PLB found that UTU's claims about the inaccuracy of the revised seniority roster failed on the merits. The PLB found that Metra's prior practice was to use birth dates to break seniority ties among trainmen, and it further held that absent a provision in the collective bargaining agreement expressly governing this issue, it was Metra's prerogative to develop and apply a policy. Second, the PLB found that UTU's appeal of Metra's decision was untimely. The PLB found that UTU should have brought forward a lead claim in 1999, and by failing to do so, UTU's claims were also time-barred. Pl. Ex. 8.

Fields states that he did not learn of this decision until the end of March 2004 and that he did not receive a complete copy of the decision until the end of April 2004 at the earliest. Manzanares, who left Metra's employ in May 2003, claims that he did not learn of the decision until he spoke with Fields at the end of July or the beginning of August 2004. Pl. Resp. to Def. 56.1 Stmt. ¶ 67. Plaintiffs filed this suit on October 1, 2004.

## Discussion

Defendants are entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving part[ies] [are] entitled to judgment as a matter

4

of law." Fed. R. Civ. P. 56(c). When analyzing a motion for summary judgment, the Court must view the facts in favor of the non-moving parties and draw all reasonable inferences in their favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Under the Railway Labor Act (RLA), a railway employee has an implied right of action against his union for a violation of its duty of fair representation. *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 202-03 (1944). As part of such an action, an employee can also sue his employer, but to succeed against his employer, an employee must prove that the union violated its duty of fair representation and "that the employer's conduct somehow contributed to the union's breach." *Steffens v. Brotherhood of Ry., Airline, and Steamship Clerks, Freight Handlers, Express and Station Employees*, 797 F.2d 442, 445 (7th Cir. 1986). Because no jury could reasonably find that the UTU violated its duty of fair representation, the Court finds that the plaintiffs' claims against UTU and Metra fail.

A union violates its duty of fair representation if its actions are "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991).[1] Plaintiffs claim that UTU acted arbitrarily by delaying the pursuit of their grievances and by failing to adequately investigate Metra's prior method of breaking seniority ties. *See* Pl. Mem. in Opp. to Def. UTU Mem. at 12, 15. To succeed on their claims, plaintiffs must demonstrate that UTU acted arbitrarily in processing their grievances and that "the outcome of the arbitration would probably have been different but for the union's activities." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171,

---

[1] Defendants state that the Seventh Circuit requires a plaintiff to prove that a union has intentionally violated its duty of fair representation. *See, e.g., Dober v. Roadway Express, Inc.*, 707 F.2d 292, 295 (7th Cir. 1983). The Supreme Court, however, rejected the requirement of an intentional violation in *O'Neill*, 499 U.S. at 67.

5

1176-77 (7th Cir. 1995).

The Court assumes for purposes of discussion that UTU acted arbitrarily in belatedly processing and inadequately investigating plaintiffs' grievances. Regardless, no jury reasonably could find that the union's conduct, despite being inept, actually affected the PLB's decision. First, though UTU may have unduly delayed processing of the grievances, this did not affect the PLB's decision. The PLB noted the untimeliness of the appeal but nonetheless dealt with the grievance on the merits. For this reason, no reasonable jury could find that prompt action by the UTU could have affected the outcome. Second, plaintiffs have not offered evidence from which a jury reasonably could find that investigation of Metra's past practice by the UTU could have affected the PLB's decision.

Defendants present the testimony of several members of Metra's management team who stated that the agency's consistent and longstanding policy was to use birth dates to break seniority ties among trainmen who were hired off the street. Peter Zwolfer (Superintendent) Dep. at 70-71; Paul Zwolfer (Crew Management Department Manager) Dep. at 33-36; James Finn (Labor Relations Manager) Dep. at 56-64. Defendants also submit the declaration of Brenda Smith, the Director of Human Resources for Metra, who states between 1991 to 1998, there have been nine instances in which Metra hired multiple trainmen off the street, and in each instance, Metra used the trainmen's birth dates to break seniority ties. Smith Decl. ¶ 5.

Plaintiffs counter by citing the testimony of three individuals who claim that Metra used multiple methods to break seniority ties, including alphabetically using last names and numerically using social security numbers. Defendants correctly point out, however, that none of these individuals had personal knowledge that would support a finding that Metra's past

6

practices in breaking seniority ties involved the use of something other than birth dates. Bernard Leslie and Kevin King, two UTU officials, stated that there were different methods for breaking seniority ties for trainmen, but they cited no instances, other than this case, in which Metra used a method other than trainmen's birth dates. Leslie Dep. at 314-320; King Dep. at 16; 26-27. Lee Thomas, Metra's Superintendent of Contract Carriers, also stated that the company had multiple methods of breaking seniority ties, but he, like Leslie and King, is unable to recall any occasions when that happened in breaking seniority ties among trainmen. Moreover, because Thomas only became a superintendent in May 1998, he concedes that he has no personal knowledge of Metra's policy for breaking seniority ties among trainmen before that date. Thomas Dep. at 20, 31-33, 42-43, 47-48, 58-60, 70. The testimony offered by plaintiffs is insufficient to show a genuine issue of fact regarding Metra's prior practice. In short, no jury reasonably could find that plaintiffs suffered any harm as a result of UTU's allegedly poor investigation.

## Conclusion

For the reasons stated above, the Court grants defendants' motions for summary judgment (docket nos. 11 & 15). The Clerk is directed to enter judgment in favor of the defendants.

_____
MATTHEW F. KENNELLY
Date: January 26, 2006                                          United States District Judge